UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PERCY GREEN II, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 4:06 CV 1667 RWS |
| v. ) | |
| ) | |
| STATE OF MISSOURI, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

In a thirteen count complaint, Plaintiff Percy Green II sued more than twenty defendants for alleged violations of his constitutional and statutory civil rights and Missouri common law. All of his claims arise out of his arrest at a St. Louis City School Board meeting on November 18, 2003 and his subsequent prosecution.

On August 17, 2010 I granted summary judgment to all defendants on all claims except for three claims against Defendants Charles McCrary, the Director of Security for the St. Louis Public Schools, and Kestner Miller, a Safety Officer for the St. Louis Public Schools. The only remaining claims against McCreary and Miller are for the alleged violation of Green's First Amendment rights, violation of Green's statutory rights pursuant to 42 U.S.C. § 1981, and conspiracy to violate Green's constitutional and statutory rights in violation of 42 U.S.C § 1985. On August 17, 2010 I granted McCrary and Miller leave to move for summary judgment on any remaining issues. This matter is now before me on Defendants McCrary and Miller's Motion for Summary Judgment.

*I. Background*

The background and facts of this case have been extensively set out in the Memorandum

and Order dated August 17, 2010 ("August 2010 Order"). As a result, only the background pertinent to the pending motion for summary judgment will be repeated.

Plaintiff Percy Green is a well-known civil rights activist in St. Louis. Green's long history of civil rights activism is discussed in the landmark employment discrimination case, <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 79 (1973). In the Spring of 2003, three decades after Green's civil rights activities reached the United States Supreme Court, Green became concerned about the actions taken by recently elected members of the St. Louis School Board ("School Board"). After being officially sworn in, the newly constituted School Board's actions caused an outpouring of anger in the district and swelled the number of people attending School Board meetings. Green was one of the people who began attending School Board meetings and it is his arrest at the November 18, 2003 School Board meeting that gave rise to this lawsuit.

Green attended the meeting of the School Board on November 18, 2003. Green was sixty-eight years old. The meeting was held in the auditorium at Carr Lane School. Green testified that the auditorium was nearly full and "an enormous number of people" were present. Defendant School Security Officers Charles McCrary and Kestner Miller were also in attendance. McCrary testified that due to recent acts of violence against board members at prior meetings, he was ordered to provide additional school security personnel at the meeting. The additional security included a contingent of St. Louis police officers who were present at the Meeting. Miller testified that his duties were to provide security and maintain order, and he received all instructions from his supervisor, McCrary.

McCrary was generally aware of Green's prior civil rights activities and considered Green "a well known civil rights activist in the St. Louis area" but "did not have any personal knowledge

regarding any specific civil rights exercised by [Green]." Before that night, Miller did not have personal knowledge of Green's history as a civil rights activist.

The School Board's meeting was contentious and speakers were routinely interrupted by shouts from the audience. Green observed a lot of yelling. According to Green, the yelling was coming from "everywhere in the auditorium." Green heard yelling from his right, his left, behind him, and in front of him.

There is a factual dispute concerning Green's behavior at the meeting. Green states that he spoke during the public access time. Green testified that during other portions of the meeting, he did not make "any noise" louder than a conversational tone, and he did not "boo." Defendant School Security Officers deny that Green comported himself quietly and calmly during the meeting. McCrary claims that he heard Green repeatedly make loud disruptive outbursts, but he is unable to remember the specific words Green spoke. McCrary also testified that he heard the School Board President, Darnetta Clinkscale repeatedly ask Green to refrain from making disruptive outbursts and that he personally made a request that Green stop his outbursts while School Board members were conducting their discussions. McCrary also testified that he did not ask any police officers to arrest Green, and he did not enter an agreement with any police officers or "named defendants" to arrest or prosecute Green.

There is no evidence before me that Miller saw or heard Green make any loud outbursts. When asked to state what comments or statements Green made during the meeting, Miller did not mention any loud outbursts. Miller did, however, witness others telling Green to be quiet. For example, Miller testified that he witnessed Clinkscale repeatedly ask Green to refrain from making verbal disruptions. Miller also testified that he witnessed McCrary ask Green not to make any

outbursts. Miller testified that he did not ask police officers to arrest Green and that he did not enter an agreement with any police officers or "named defendants" to arrest or prosecute Green. The factual dispute concerning the events that followed Defendant School Security Officers' approaching Green, the role of the arresting police officers, and the other events that occurred as a result of Green's arrest are not pertinent to the current motion for summary judgment and are set out exhaustively in my August 2010 Order.

Green filed his initial complaint on November 17, 2006. Over the course of the last three and a half years, Green has amended his complaint four times. In my August 2010 Order I granted summary judgment in favor of all defendants on all claims except for three claims Green asserts against Charles McCrary and Kestner Miller. McCrary and Miller have both moved for summary judgment on each of the remaining claims. In Count I, Green sues Defendant School Security Officers in their individual capacities for violation of Green's First Amendment rights. In Count II, Green sues Defendant School Security Officers for violation of his statutory civil rights pursuant to 42 U.S.C. § 1981. In Count IV, Green alleges that Defendant School Security Officers conspired with Police Officers and the Police Department to violate his constitutional and statutory civil rights in violation of 42 U.S.C. § 1985.[1]

## II. *LEGAL STANDARD*

In considering whether to grant summary judgment, a district court examines the "pleadings, the discovery and disclosure materials on file, and any affidavits." Fed. R. Civ. P. 56(c)(2). Summary judgment is appropriate if the evidence, viewed in the light most favorable to

---

[1] I granted summary judgment on behalf of the Police Officers and Police Department for this claim in my August 2010 Order.

the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Lynn v. Deaconess Medical Center, 160 F.3d 484, 486 (8th Cir. 1998). When a genuine issue of material fact exists, summary judgment should not be granted.

The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof. Id. at 324. In resisting a properly supported motion for summary judgment, the nonmoving party has an affirmative burden to designate specific facts creating a triable controversy. Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004).

## III. *DISCUSSION*

As I discussed, in my August 2010 Order, I encountered considerable difficulty understanding Green's claims and legal arguments because Green's memoranda and responses lack clarity. Similarly, Green's Response to the current Motion for Summary Judgment lacks clarity and is difficult to understand. For example, Green argues Defendant School Security Officers are not entitled to judgment as a matter of law on Green's Fourteenth Amendment claim. However, my August 2010 Order clearly granted summary judgment in favor of *all* defendants on Green's Fourteenth Amendment claims. Similarly, Green argues he did not trespass during the

School Board Meeting. This argument is also misplaced. My August 2010 Order discusses the trespass doctrine in analyzing whether the Defendant Police Officers, not the Defendant School Security Officers, had probable cause for Green's arrest. As set out extensively in my August 2010 Order, I concluded Defendant Police Officers had probable cause and granted summary judgment in their favor on Green's Fourth Amendment claim. As a result, I will disregard Green's arguments regarding the Fourteenth Amendment and trespass doctrine because they are unrelated to Green's remaining claims against Defendant School Security Officers.

### 1. *First Amendment Claims*

In my August 2010 Order I construed Green's First Amendment causes of action to assert two claims of retaliation based upon Green's past civil rights activities and his speech during the public comment portion of the Meeting.[2]

Green asserts the following in support of his First Amendment retaliation claims: Green was not disruptive during the Meeting and spoke only during the public comment time, that McCrary and Miller knew Green was a civil rights activist, that the School Board was "adverse" to Green, that Green had spoken "at most" school board meetings against the Board, that Green was arrested during the School Board proceedings concerning a major financial issue, that Green was the only person arrested, and that Defendant McCreary's comments to the arresting police officers that Green had been disruptive during the School Board Meeting were pretext but for which Green would not have been arrested.

The First Amendment to the United States Constitution provides that "Congress shall make no law ... abridging the freedom of speech. . . or the right of the people to peaceably

---

[2] Green does not dispute my characterization of his First Amendment claims.

assemble . . . ." "A citizen's right to exercise First Amendment freedoms without facing retaliation from government officials is clearly established." Baribeau v. City of Minneapolis, 596 F.3d 465, 474 (8th Cir. 2010), 596 F.3d at 481.

In order to proceed to trial on his First Amendment retaliation claim, Green must put forth facts to establish a causal connection between Defendant School Security Officers' retaliatory animus and Green's subsequent injury. Id. "Retaliation need not have been the sole motive, but it must have been a 'substantial factor' in the decision to arrest." Id. Green "must show that the retaliatory motive was a 'but-for' cause of the arrest—i.e., that [he was] 'singled out' because of [his] exercise of constitutional rights." Id. Finally, Green must demonstrate that Defendant School Security Officers' "adverse action caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing in the protected activity." Id.

In the following two subsections I discuss why each of the "facts" Green asserts are insufficient to defend against the Defendants' Motion for Summary Judgment and why summary judgment in favor of Defendant School Security Officers on Green's First Amendment claims is appropriate.

Green is represented by counsel. Green has filed an original and four amended complaints. Green has had the opportunity to conduct discovery in this case for three years. Green fails to come forward with facts from which a trier of fact could conclude that the Defendant School Security Officers had a retaliatory animus against Green. Green's claim the Defendant School Security Officers retaliated based on his history as a civil rights activist fails because Green did not come forward with **facts** that the Defendants had knowledge of his history as a civil rights activist in a capacity that could give rise to a retaliatory animus on Defendants' part. Green's claim the

Defendants retaliated based on his comments during the public comment portion of the Meeting fails because Green does not even identify what he said, much less identify any **facts** to support why his speech gave rise to a retaliatory animus in the Defendant School Security Officers.

>   *a.     There is no evidence Green was arrested in retaliation for his history as civil rights activist.*

Green alleges Defendant School Security Officers violated his First Amendment rights by retaliating against him based on his history as a civil rights activist. Defendant School Security Officers argue they are entitled to summary judgment on this claim because Green has failed to identify any specific facts to establish that retaliation for Green's history as a civil rights activist was a substantial factor or "but-for" cause of his removal from the Meeting. McCrary argues further that while he was generally aware of Green's reputation as a civil rights activist, he did not have any personal knowledge of any specific civil rights activity by Green. Miller argues that prior to the Meeting he did not have any personal knowledge regarding Green's history as a civil rights activist.

Green has failed to identify *any* evidence that Defendant School Security Officers retaliated against him for his past civil rights activities. Green asserts that "it is *likely* McCrary [and] Miller...would have had an [] extensive understanding of the community role and civil rights activism and exercise of First Amendment Rights by Green."[3] (emphasis added). Green's Affidavit in Response to Defendants' Motion for Summary Judgment extensively sets out the civil rights activities he has engaged in. However, the only reference Green makes to McCrary's alleged knowledge of Green's civil rights history is that "[a]t least Charles McCrary....is aware of

---

[3] Plaintiff Memorandum in Opposition to Summary Judgment Motion [#319; pg. 2].

-8-

my civil rights activities as I spoke at a church meeting about such where [sic] he was in the attendance."[4] Green fails to set out any facts for me to conclude that Green's speaking at a church event where McCreary was in attendance resulted in McCreary having knowledge of Green's civil rights history, any understanding McCreary may have of that history, any opinion McCreary may have regarding Green's civil rights history, *much less a retaliatory animus*.

Green further asserts in his affidavit that he "is often recognized on the street and people come up to talk to me and know who I am by sight"[5] and that he can "safely *assume* that persons...especially those who are black...would surely have known something of [his] civil rights history"[6] because he spoke at several board meetings and his name was announced each time he spoke. Green's assertions fail to establish that *McCreary or Miller* had knowledge of Green's civil rights history. Green's opinion about his fame and notoriety are not sufficient to survive a motion for summary judgment challenging whether McCreary and Miller had knowledge of Green's history as a civil right activist.

McCrary states in his affidavit that he "was generally aware of Plaintiff Percy Green's reputation as a well-known civil rights activist in the St. Louis area, but [] did not have any personal knowledge regarding any specific civil rights exercised by [Green]." Miller testified in his affidavit that prior to the Meeting he "did not have any personal knowledge regarding [] Green's alleged history as a civil rights activist." McCrary's limited awareness of Green's history

---

[4] Aff. of Percy Green filed in support of Plaintiff's Memorandum in opposition to Summary Judgment Motion [#319] ¶13.

[5] Id. at ¶38.

[6] Id. at ¶39. (emphasis added).

as a civil rights activist and Miller's lack of knowledge of Green's civil rights history do not establish that either Defendant had a retaliatory motive based on Green's long history as a civil rights activist, much less one that was a substantial factor in Green's arrest.  Additionally, Green's argument that it is *likely* Defendant School Security Officers would have an extensive understanding of Green's civil rights activism prior to the Meeting does not satisfy Green's burden to "produce sufficient evidence to support the existence of the essential elements of his case." Celotex, 477 U.S. at 324.  After three years of discovery Green has failed to provide any facts from which a trier of fact could conclude that McCreary and Miller had knowledge of Green's history as a civil rights activist that gave rise to a retaliatory animus on their part.

I need not consider the other facts Green asserts in his Response regarding his retaliation claim based on his history as a civil rights activist.  Without having brought forth facts to establish the Defendant School Security Officers had meaningful knowledge of Green's civil rights history, the other facts asserted do not provide a basis for me to find a retaliatory animus on the part of Defendant School Security Officers based on Green's history as a civil rights activist. Accordingly, I will grant summary judgment in favor of Defendant School Security Officers on Green's claim that he was retaliated against by the Defendant School Security Officers on the basis of his history as a civil rights activist.

    *b. There is no evidence Defendant School Security Officers retaliated against Green for his comments during the public comment portion of the School Board meeting.*

Green also alleges the Defendant School Security Officers violated his First Amendment rights by retaliating against him because of his comments during the public comment portion of the Meeting. McCreary and Miller assert they are entitled to judgment as a matter of law because

Green has failed to identify specific facts to prove that retaliation based on Green's comments during the School Board Meeting were the "but-for" cause of Green's removal from the Meeting or his subsequent arrest.

In order for Green to proceed to trial on his First Amendment retaliation claim, Green must show a causal connection between Defendant School Security Officers' retaliatory animus and Green's subsequent injury. Baribeau, 596 F.3d at 481. "Retaliation need not have been the sole motive, but it must have been a 'substantial factor' in the decision to arrest." Id. Green "must show that the retaliatory motive was a 'but-for' cause of the arrest—i.e., that [he was] 'singled out' because of [his] exercise of constitutional rights." Id. Finally, Green must demonstrate that Defendant School Security Officers' "adverse action caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing in the protected activity." Id.

Green first argues that McCrary and Miller had a retaliatory animus based on his comments at the Meeting because Green was not disruptive during the Meeting. Testimony by Defendant School Security Officers disputes that Green was not disruptive. However, to consider the facts in the light most favorable to Green, I must assume Green was not disruptive during the School Board Meeting. Even under this view, Green has failed to establish how his alleged nondisruptive conduct during the Meeting establishes Defendant School Security Officers had a retaliatory animus based on his comments. That Green only spoke during the public comment portion of the Meeting does not establish that Green's comments created a retaliatory animus on the part of Defendant School Security Officers. Green uniquely knows what he said during the Meeting. *After filing four versions of his complaint and engaging in three years of discovery,*

-11-

*Green has failed to identify the speech that he claims gave rise to his claim for retaliation in violation of his First Amendment rights.*

Green next asserts the School Board had a viewpoint that was "adverse" to him as evidence the Defendant School Security Officers retaliated against him. Green asserts "the majority of the school elected board and sitting on [November] 18, 2003 was adverse to [him] and [he was] adverse to them" and that they were "especially adverse [concerning] substantial financial matters such as the five million [dollars] paid by the school board to William Roberti...which was...opposed most notably by Green."[7] The School Board is no longer a party in this case. In the August 2010 Order I granted summary judgment on behalf of the School Board on all claims that Green asserted against it. Green's assumptions and vague allegations do not provide any factual basis for me to conclude that the *School Board's* allegedly adverse viewpoint establishes that these *Defendant Security Officers* had a retaliatory animus against Green because of his comments.

Green also relies on his being "outspoken" at previous school board meetings to establish Defendant School Officers had a retaliatory animus based on his comments at the Meeting on November 18, 2003. Green asserts that at previous meetings he "spoke out, at the public comment time, against various policies and practices of the board majority" and that he "became, if not the major, one of the major spokespersons against the school board majority, especially as to the financial issues, most notably the five million dollar payment to William Roberti, the superintendent hired by the board majority."[8] While Green's allegation that his being outspoken

---

[7] Id.

[8] Id.

at prior meetings gave rise to retaliation is sufficient to withstand a motion to dismiss, this bare allegation, without evidence, cannot withstand a motion for summary judgment. In my August 2010 Order I granted summary judgment on behalf of the School Board on all claims that Green asserted against it. Green's assertion that he spoke out against the *School Board* at previous meetings does not provide a basis for me to conclude that the *Defendant School Security Guards* retaliated against Green based on his comments during the November 18, 2003 meeting.

Green next cites the timing of his arrest to establish Defendant School Officers retaliated against him because of his comments during the Meeting. Green asserts "the Board was suspiciously engaged in the selection of the Board representative to the teacher pension fund at exactly the same time Green was arrested."[9] Green further asserts that "Byron Clemens, the teacher union vice president had [stopped] Green from leaving...and asked Green to stay for [this] major financial issue."[10] Green's argument fails because he does not address how the timing of his arrest is relevant to his unidentified comments during the comment portion of the Meeting. Green does not indicate that his comments concerned this issue or provide any other basis for a trier of fact to conclude the timing of the arrest is indicative of Defendants having a retaliatory animus arising from Green's comments. As a result, this argument fails.

Green argues that he was targeted by McCreary and Miller because he was the only person arrested during the Meeting. While this fact may support Green's argument that he was targeted, Green's claim ultimately fails because his vague allegations do not constitute facts that support the essential element of his claim that McCreary and Miller had a retaliatory animus based

---

[9]Id. at 6.

[10]Id.

on Green's comments during the Meeting.

Green also argues that McCreary's report to police officers that Green had been disruptive during the Meeting constitutes a false pretext for his arrest. This argument is not persuasive. Green appears to be referring to the three-step burden shifting test applied to First Amendment employment retaliation claims. In such an analysis, a plaintiff has the initial burden of satisfying the prima facie case for his claim. Morris v. City of Chillicothe, 512 F.3d 1013, 1018 (8th Cir. 2008). "Once the plaintiff has satisfied the initial burden, the burden shifts to the [defendant] to show a legitimate, nondiscriminatory reason for his or her actions." Id. at 1019. "If the [defendant] meets this burden, the burden shifts back to the [plaintiff] to show that the defendant's actions were a pretext for illegal retaliation." Id. Green has failed to carry the burden of establishing the prima facie case for his First Amendment claim because he has failed to come forward with facts, even those which are uniquely within his control, such as what he said at the Meeting, to show that McCreary and Miller had a retaliatory animus that was a substantial factor in his arrest. As a result, I do not reach the merits of Green's pretext argument.

Because Green has failed to bring forth facts to support the essential element of his claim that McCreary and Miller had a retaliatory animus based on Green's comments during the Meeting, I will grant summary judgment in favor of Defendant School Security Officers on this claim.

    *2.    42 U.S.C. § 1981 Claim*

Green claims he was denied equal rights under the law on account of his race in violation of 42. U.S.C. § 1981. Defendant School Security Officers argue they are entitled to judgment as a matter of law on Green's § 1981 claim because Green has failed to present any evidence that

Defendant School Security Officers acted with the intent to discriminate against him on the basis of race. Green's response in opposition does not address any of Defendant School Security Officers' arguments regarding his § 1981 claim.

Section 1981 can be violated only by purposeful discrimination. <u>Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania</u>, 458 U.S. 375, 389, 391 (1982). Liability under Section 1981 can only be imposed if the plaintiff can prove the defendant engaged in intentional discrimination on the basis of race. <u>Id</u>. at 391.

As discussed extensively in my August 2010 Order, there is simply no evidence that the decision to remove Green from the School Board Meeting was based on race. Green has failed to produce any evidence that Defendant School Security Officers' acted with the intent to discriminate against Green on the basis of race. As a result, Green's § 1981 claim fails as a matter of law, and I will grant summary judgment to Defendant School Security Officers on this claim.

3. 42. U.S.C. § 1985 Conspiracy Claim

Green finally contends that there was a "seamless conspiracy" to violate his constitutional rights between Board Member Clinkscales, McCrary, Miller and the arresting police officers. My August 2010 Order granted summary judgment to all defendants Green asserted a conspiracy claim against except for Defendant School Security Officers. McCrary and Miller now argue they are entitled to judgment on Green's conspiracy claims because Green has failed to prove Defendant School Security Officers violated his First Amendment rights.

In order to prevail on a claim for civil conspiracy under Section 1985, Green must prove a deprivation of a constitutional right or privilege. <u>White v. McKinley</u>, 519 F.3d 806, 814 (8th Cir. 2008). Green has failed to establish that he was deprived of a constitutional right or privilege

because I granted summary judgment in favor of McCrary and Miller on Green's First Amendment claims. As a result, Green's § 1985 claim fails as a matter of law and I will grant summary judgment in favor of Defendant School Security Officers on this claim. Accordingly,

**IT IS HEREBY ORDERED that** Defendants Charles McCrary and Kestner Miller's motion for summary judgment [#313] is **GRANTED**.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 11th day of March, 2011.